**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0954-24

JOSEPH GRIECO,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

> Argued November 10, 2025 – Decided December 1, 2025
>
> Before Judges Sabatino and Walcott-Henderson.
>
> On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx9022.
>
> Christopher A. Gray argued the cause for appellant (Sciarra Catrambone Curran and Gray LLC, attorneys; Christopher A. Gray, of counsel and on the briefs; Frank C. Cioffi, on the brief).
>
> Thomas R. Hower, Staff Attorney, argued the cause for respondent (Kimberly A. Sked, Staff Attorney, on the brief).

PER CURIAM

Petitioner Joseph Grieco appeals from a November 6, 2024 final administrative determination by respondent, Board of Trustees of the Police and Firemen's Retirement System of New Jersey ("the Board"), denying his application for accidental disability ("AD") retirement benefits. Petitioner contends the Board's determination is arbitrary, capricious, and unreasonable because it disregards the undisputed medical evidence and credibility findings made by the Administrative Law Judge ("ALJ"). For the reasons that follow, we reverse.

I.

In February 2009, petitioner began his employment as a police officer in the Borough of Tenafly. He was automatically enrolled as a member of the Police and Firemen's Retirement System ("PFRS"). As a patrol officer, with prior training as an emergency medical technician ("EMT"), petitioner's duties required him to respond to emergencies and medical assistance calls.

On February 16, 2020, petitioner was dispatched to County Manor Nursing Home on a medical response call. According to petitioner, he was usually assigned to respond to medical calls because of his background as an EMT prior to becoming a police officer. When he arrived, he was ushered into

2

a room with two residents, one of whom appeared to be in respiratory distress and was coughing. Petitioner testified he remained with the residents in the room for at least thirty minutes until paramedics arrived. He was not wearing a mask.

When paramedics arrived, one of them noticed a sign outside the room stating "masks recommended." Petitioner testified he did not observe the sign upon arrival and was not provided with a mask in his medical kit he brought into the room with him.

Within days of responding to this medical call, petitioner began experiencing symptoms, including severe migraines, vertigo, lightheadedness, and chest pains, resulting in sick leave from work. Over the ensuing months, he tried several times to return to work to no avail as his debilitating symptoms persisted. He was eventually diagnosed with post-acute sequelae of SARS-CoV-2 infection, otherwise known as "long-COVID," and his department agreed he could no longer perform his duties as a police officer.

On June 1, 2020, petitioner filed an application for disability retirement, asserting: "I CONTRACTED COVID-19 AT WORK IN FEBRUARY OF 2020. THERE WAS NO TESTING AT THE TIME. I HAVE SEVERE POST COVID 19 [sic] PROBLEMS THAT HAVE PREVENTED ME FROM RETURNING

A-0954-24

TO WORK. THOSE PROBLEMS INCLUDE VESTIBULAR MIGRAINES AND MEMORY LOSS AND VERTIGO."[1]

As part of the application review process, the Board referred petitioner for two medical examinations; the first was conducted by Dr. Steven Lomazow, M.D., a psychiatrist and neurologist, who conducted an Independent Medical Examination ("IME"); and the second was conducted by Dr. Matthews-Brown[2] of the PFRS's Medical Review Board ("MRB").[3]

In his October 28, 2022 report, Dr. Lomazow concluded petitioner "has a disability at the present time with the inability to tolerate motion while driving which renders him totally and permanently disabled from his job as a police officer as outlined in the reviewed job description," while also stating, "[t]he

---

[1] Based on the record before us, the application for disability retirement was filed on June 1, 2022, however, on April 21, 2022, petitioner filed a PFRS Supplemental Application for AD benefits due to COVID-19.

[2] The record before us does not contain Dr. Matthews-Brown's first name.

[3] Pursuant to N.J.S.A. 43:16A-7: "[T]he medical board, after a medical examination of [a member seeking benefits], shall certify that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him."

A-0954-24

relationship between this symptom and [COVID-19] is not clear." Dr. Matthews-Brown reviewed Dr. Lomazow's report and petitioner's medical records and concluded petitioner was totally and permanently disabled due to occipital headaches, but sought clarification from Dr. Lomazow as to whether petitioner's disability is or is not a direct result of the February 2020 exposure.

In a January 3, 2023 addendum, Dr. Lomazow clarified that after further review of the records and questions provided to him, petitioner's condition "[did] not appear to be preexisting . . . but rather the direct result of the incident of [February 2020], though the timeline is a bit confusing." (emphasis added). On January 24, 2023, Dr. Matthews-Brown noted:

> [t]he MRB again agrees with the IME and considers the member to be totally and permanently disabled for the same reasons as mentioned in the report dated [November 18, 2022]. In addition, the MRB determines the member's disability is the direct result of the incident which occurred on the above date and is not associated with or accelerated by a pre-existing condition.

In essence, both doctors determined that petitioner's disability was the direct result of the February 16, 2020 incident and was not the product of any preexisting condition.

In a March 2023 determination, the Board granted petitioner ordinary disability instead of AD retirement benefits, effective September 1, 2022.

5

Petitioner requested an administrative appeal and the matter was transferred to the Office of Administrative Law ("OAL") as a contested case pursuant to N.J.S.A. 52:14B-1 to -31.

In November 2023, a plenary hearing commenced before ALJ Andrew M. Baron. Petitioner testified regarding his close quarters contact with a visibly symptomatic nursing home patient in February 2020, the rapid onset of his debilitating symptoms, and his inability to perform the functions and duties of his job. He testified that he had never experienced vertigo issues prior to the February 2020 medical call, and "[d]riving a car felt like [he] was driving a 5,000-pound rock. The vertigo was extremely intense," and it was "very hard to find a doctor at that time [because] [t]hings were starting to shut down." The Board did not present any witnesses.

On September 4, 2024, the ALJ issued his Initial Decision, finding petitioner credible and concluding that he was totally and permanently disabled as a direct result of the February 2020 work-related exposure. The ALJ further concluded petitioner had proven by a preponderance of the evidence that his exposure to COVID-19 was the direct cause of his long-COVID diagnosis, which rendered him totally disabled and unable to return to work as a police officer. The ALJ specifically described petitioner as "a very credible witness

6

and party, who only reluctantly and as a last resort, was forced to leave his job [and] elected to file for accidental disability." The ALJ concluded that the undisputed medical evidence and credible live testimony established that the traumatic workplace injury occurred during petitioner's regular assigned duties, was "undesigned and unexpected," and was "identifiable as to time and place."

The Board rejected the ALJ's Initial Decision awarding AD retirement benefits and instead awarded Ordinary Disability Retirement. In its November 6, 2024 Final Administrative Determination, the Board stated the ALJ failed to properly apply the Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189 (2007) factors and "focuse[d] on the incorrect conclusion that the Board did not accept the medical experts' opinions, which is simply not true." The Board clarified that its determination reflects its acceptance of the medical experts' opinions that petitioner is totally and permanently disabled, but emphasized that its denial is based on two of the Richardson factors: (1) whether the incident is unidentifiable to time and place; and (2) whether the incident took place during and as a result of the performance of his regular or assigned duties. See id. at 192. Under N.J.S.A. 43:16A-17, the petitioner bears the burden to prove all elements for accidental disability retirement benefits by a preponderance of the evidence. See id. at 212.

A-0954-24

The Board further noted "[n]either of these standards are based upon medical opinion. . . . [and] the [Initial Decision] fails to provide an analysis of the requirement under Richardson based on either of these standards." Further, the Board noted petitioner "provided no credible evidence that he was ever diagnosed with COVID-19" and "without evidence of when and where the incident took place, there is no confirmation that it occurred during his regular and assigned job duties." The Board determined petitioner failed to satisfy his burden of proving a traumatic event "identifiable as to time and place" by a preponderance of the evidence or that the disabling incident occurred "during and as a result of his regular or assigned duties."

This appeal followed.

## II.

Our review of an administrative agency determination is limited. In re Carter, 191 N.J. 474, 482 (2007); McKnight v. Bd. of Rev., Dep't of Lab., 476 N.J. Super. 154, 162 (App. Div. 2023). We will sustain a board's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." McKnight, 476 N.J. Super. at 162 (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). Under this standard, our scope of review is guided by three major inquiries: (1) whether the agency's

decision conforms with relevant law; (2) whether the decision is supported by substantial, credible evidence in the record; and (3) whether in applying the law to the facts, the administrative agency "clearly erred in reaching" its conclusion. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

A member seeking accidental disability retirement benefits must prove five factors:

1. that he is permanently and totally disabled;

2. as a direct result of a traumatic event that is

    a. identifiable as to time and place,

    b. undesigned and unexpected, and

    c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Richardson, 192 N.J. at 212-13.]

A disability must be the "direct result" of a traumatic event, so that the event constitutes "the essential significant or the substantial contributing cause of the [applicant's] disability." Gerba v. Bd. of Trs. of the Pub. Emps.' Ret. Sys., 83 N.J. 174, 185-86 (1980). A "traumatic event" is "an unexpected external happening that directly causes injury and is not the result of pre-existing disease alone or in combination with work effort." Richardson, 192 N.J. at 192. The burden of proving the "direct result" by competent medical testimony rests on the applicant. See Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 428 (2018).

Before us, petitioner contends the Board's final determination is arbitrary, capricious and unreasonable as it disregards the conclusions of its own medical experts, Dr. Lomazow who performed the IME and Dr. Matthews-Brown of the MRB. Additionally, petitioner challenges the Board's authority to overrule the MRB, asserting "N.J.S.A. 43:16A-7 does not provide a catch-all for the Board to overrule the [MRB]." He further asserts the Board erred by disregarding the credibility findings made by the ALJ, who presided over the hearing, and facts available to the general public at the outset of the COVID-19 pandemic.

The Board, however, maintains that petitioner failed to satisfy two elements of Richardson, namely: whether the traumatic injury was "identifiable

10

as to time and place" and whether the traumatic event occurred "during and as a result of [his] regular or assigned duties." With respect to the time and place requirement, the Board emphasizes the absence of laboratory confirmation of COVID-19 infection at the time of the alleged exposure in February 2020, or at any time, the lack of evidence petitioner encountered a COVID-19 positive patient, and absence of any evidence showing definitively when petitioner contracted COVID-19 all serves as a basis to reject his claim.

We reject the Board's determination as arbitrary, capricious and unreasonable because it is contrary to the evidence presented. We further conclude, based on the entirety of this record, the Board misapplied the requisite standard of proof and imposed too high a standard on petitioner to satisfy the Richardson factors identifiable as to time and place and within the scope of his assigned duties. McKnight, 476 N.J. Super. at 162.

We first address petitioner's contention the Board erred by rejecting the findings and conclusions of its own experts. Here, in perhaps the most unusual of circumstances, both Dr. Lomazow and Matthews-Brown reviewed petitioner's medical records and concluded that he is permanently disabled as a direct result of the February 2020 exposure to COVID-19. Dr. Lomazow expressly stated that the condition does not appear to be a preexisting condition, but rather the

A-0954-24

direct result of the February 2020 incident. Similarly, Dr. Matthews-Brown concluded petitioner's disability is the direct result of the incident and is not associated with or accelerated by a pre-existing condition. Although the Board did not present Drs. Lomazow or Matthews-Brown at the hearing, their reports were introduced in evidence and considered by the ALJ without objection.

Following the hearing, the ALJ found petitioner's testimony regarding the February 2020 exposure to an ill patient who was coughing and exhibiting signs of COVID-19 illness to be credible and remarked about the undisputed medical evidence. She also considered that this incident occurred at a time when masks and testing were not available, and that petitioner began exhibiting signs of unfamiliar illness within days of this exposure, resulting in prolonged illness and functional limitations, which were not disputed by his employer or the Board. The Board, however, presented no testimony and no medical evidence to explain or refute the IME or MRB's conclusion that petitioner is totally and permanently disabled as a direct result of the February 2020 exposure to COVID-19, and the ALJ noted the Board's failure to offer any reasoned basis for disregarding the MRB's conclusions, which were consistent with the opinions of both petitioner's treating physician, Dr. Silverman, and Dr. Lomazow.

A-0954-24

In light of this overwhelming evidence, we discern the ALJ properly concluded petitioner established the essential elements of his claim for AD retirement benefits by a preponderance of the evidence. We further reject the Board's contention petitioner did not satisfy the Richardson factors by showing that he encountered a traumatic event that is "identifiable as to the time and place." We reach this assertion in part recognizing the unique vulnerabilities of first responders during the height of the COVID-19 pandemic as evidenced by Governor Murphy's extended closure of offices, schools, and other public areas, including nursing homes where petitioner was exposed. Although Governor Murphy's E.O. 103 was signed in March 2020, weeks before petitioner's putative medical call, we need not turn a blind eye to the undisputed fact that COVID-19 was already spreading throughout our state and country prior to implementation of emergency measures. Our recognition of these well-known facts regarding the nature of the early stages of the pandemic in early 2020 is undergirded by Governor Murphy's later extension of eligibility for AD benefits to PFRS members exposed to COVID-19.[4] See P.L. 2020, Ch. 54.

---

[4] On March 9, Governor Murphy issued EO 103 in response to the COVID-19 outbreak, which was spreading globally, including in the United States. Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020). Following petitioner's exposure to COVID-19 in February 2020, in June, Governor Murphy

A-0954-24

Against this backdrop, we reject the Board's contention that petitioner failed to demonstrate that he had a traumatic event that is identifiable as to time and place based on "credible, objective evidence to support that he contracted COVID-19 as a direct result of his exposure to an unidentified patient who may or may not have had COVID-19." Rather, as ALJ Baron found, petitioner reported to work in February 2020 and had no restrictions on his ability to perform his job duties, he was exposed to a patient in respiratory distress at the nursing home when he entered a room to tend to a patient and await paramedics, he remained unmasked, and was exposed to another patient in the same confined space who was exhibiting respiratory distress and coughing, and within days, he began experiencing symptoms associated with COVID that left him unable to work.

Contrary to the Board's contention, Richardson does not require or impose so high a standard as to compel the rejection of petitioner's application for AD because he must state "with certainty when [he] sustained a 'presumed' COVID-19 infection." We decline to adopt the Board's rigid interpretation of Richardson based on one sentence from an unpublished opinion. See Rule 1:36-3. Rather,

---

signed into law P.L. 2020, Ch. 54, which extended eligibility of AD benefits to PFRS members exposed to COVID-19.

we conclude petitioner establishes his claim by a preponderance of the evidence based on unrebutted testimony and evidence.

Additionally, factor three of the Richardson test requires the traumatic event to occur "during and as a result of the member's regular or assigned duties." 192 N.J. at 213. Events transpiring while an officer is performing duties he is trained for and regularly expected to perform meet this prong. Id. at 213-15; see also Moran v. Bd. of Trs., 438 N.J. Super. 346, 351 (App. Div. 2014) (involving a firefighter responding to emergency where he went beyond ordinary routine).

The Board suggests that because a precise time and place cannot be identified, then neither can petitioner's regular and assigned duties. The Board argues that "if [petitioner] even had COVID-19, he could have been exposed virtually anywhere and at any time during the period leading up to the onset of his symptoms." However, petitioner was dispatched as the primary responding officer to a medical call at County Manor while on patrol duty on February 16, 2020. Police officers providing medical assistance at the nursing home was a routine part of petitioner's employment. Petitioner's regular assignment and duties consisted of scene control and emergency duties, even those typically available to medics, which he conducted during the February 2020 incident.

A-0954-24

By demonstrating the scope of his duties and his official actions on the February 2020 incident, petitioner satisfies his burden under the third <u>Richardson</u> prong. Accordingly, the undisputed evidence satisfies <u>Richardson</u>'s requirement for an event "identifiable as to time and place." 192 N.J. at 192.

Accordingly, the Board's Final Administrative Determination was arbitrary, capricious, and unreasonable, and the ALJ's award of AD retirement benefits should be reinstated.

Reversed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division